UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    Court File No. 16-cr-108 (JRT/LIB)

            Plaintiff,

v.                                           **REPORT AND RECOMMENDATION**

Arlene Theresa Bell,

            Defendant.

     This matter comes before the undersigned United States Magistrate pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636 and Local Rule 72.1, upon Defendant Arlene Theresa Bell's ("Defendant") Motion to Suppress Statements, Admissions, and Answers. [Docket No. 25]. The Court held a motions hearing on July 28, 2016, regarding the parties' pretrial motions.[1] The Court took the parties' pretrial motions under advisement at that time.

     For the reasons discussed herein, the Court recommends that Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 25], be **DENIED**.

## I.     BACKGROUND AND STATEMENT OF FACTS

### A.  Background

     Defendant is charged with one (1) count of assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(a)(6), 1151, and 1153(a) and one (1) count of assault with a dangerous weapon in violation of 18 U.S.C. §§ 113(a)(3), 1151, and 1153(a). (Indictment [Docket No. 1]).

---

[1] The Court addressed the parties' pretrial motions for discovery and production of evidence by separate Order. [Docket No. 41].

**B. Facts**

The record presently before the Court indicates that Defendant is alleged to have assaulted W.J.T. with a knife in a manner which resulted in serious bodily harm on March 19, 2016. (Id.). That alleged assault occurred in the State and District of Minnesota and within the exterior boundaries of the Red Lake Indian Reservation. (Id.).

In the course of investigating the incident alleged in the present Indictment, FBI Special Agent ("SA") Mark Meyers and Criminal Investigator ("CI") Paul Kwako interviewed Defendant on March 20, 2016, at the Red Lake jail. (July 28, 2016, Motions Hearing, Digital Recording at 10:17–10:20 a.m.). SA Meyers testified that the entirety of that interview was recorded. (Id. at 10:23–10:24 a.m.).[2] SA Meyers also testified that Defendant appeared fine and coherent at the time of the interview with no indication that Defendant was under the influence of any drugs or alcohol. (Id. at 10:18–10:19 a.m.). SA Meyers further testified that during the course of the interview there was no indication that Defendant had any difficulty communicating with or understanding the officers. (Id. at 10:19–10:21 a.m.). SA Meyers also testified that he was attired in casual clothes, that CI Kwako was in a police uniform, and that neither of the officers was armed with a weapon at the time of the interview. (Id.).

Defendant's demeanor during the course of the interview was generally decent, responsive, and conversational with some tearful moments once she began describing the night of the incident which gave rise to the charges in the present Indictment. (Gov't Ex. 1). No threats were made to Defendant during the interview, and at no time did the officers raise their voices to Defendant. (Id.).

---

[2] At the motions hearing the Government, without objection, offered the recording of the interview into evidence as Government's Exhibit 1. (July 28 2016, Motions Hearing, Digital Recording at 10:19–10:20 a.m.).

At the initiation of the interview, SA Meyers identified himself, asked Defendant if she would be willing to talk with the officers, and Defendant responded by asking what SA Meyers wanted to talk about. (Id. at 00:00–0:46). SA Meyers explained that he wanted to talk with Defendant about the incidents of the previous night, and he asked Defendant for identification information, including her name, address, and contact information. (Id. at 00:46–4:27). During the initial collection of that identification information, Defendant asked SA Meyers if she had to speak with the officers. (Id. at 1:10–1:25). SA Meyers informed Defendant that she did not have to talk with the officers, but that he still needed the identification information because he needed to know who she was. (Id.).

Approximately five minutes into the interview, SA Meyers told Defendant that before they could proceed with the interview he had to advise her of her rights. (Id. at 5:19–5:30). SA Meyers placed the Advice of Rights form in front of Defendant so that she could read along on the printed form as SA Meyers read each line aloud, and then SA Meyers had Defendant read the Waiver of Rights portion of the form aloud before signing the form. (Id. at 5:30–7:30). Defendant read the Waiver of Rights portion of the form aloud and she signed the form; which SA Meyers and CI Kwako witnessed. (Id. at 7:30–7:56). After Defendant signed the Waiver of Rights portion of the form, SA Meyers began asking Defendant about the incident which gave rise to the charges that are now subject of the present Indictment, and Defendant began answering SA Meyers's questions. (Id. at 7:56–1:13:25).

Approximately nine minutes into the interview, Defendant cursorily mentioned that she had taken a drink of "Boone's Farm" the previous night, but she did not elaborate on how much of it she drank or whether or not she had become intoxicated. (Id. at 9:00–10:03). Near the conclusion of the interview Defendant asked what was going to happen next, and SA Meyers

responded that he "more than likely" would be talking to the United States Attorney and then likely returning to arrest Defendant. (Id. at 1:10:32–1:12:05). SA Meyers clarified that he was not sure exactly what would happen because it would all have to go through the process. (Id.). Defendant then asked to be returned to her cell at which time SA Meyers concluded the interview. (Id. at 1:13:25–1:13:38).

## II.    DEFENDANT'S MOTION TO SUPPRESS STATEMENTS, ADMISSIONS, AND ANSWERS. [DOCKET NO. 25].

Defendant moves the Court for an order suppressing the entirety of the statements she made at the interview on March 20, 2016. (Def.'s Mot. to Suppress Statements, Admissions, and Answers [Docket No. 25]).

In her written motion to suppress the statements she made during the March 20th interview, Defendant contends that the officers were required to provide her a Miranda warning before interrogating her, and that she did not give a valid waiver of her rights prior to the interview. (Id.). Therefore, Defendant argues, the statements should be suppressed. (Id.).

### A.  Standard of Review

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Accordingly, Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way[.]" Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444). "Interrogation under Miranda includes not only express questioning but also its functional equivalent, such as 'any word or actions on the part of the police (other than those

normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." <u>United States v. Hull</u>, 419 F.3d 762, 767 (8th Cir. 2005) (quoting <u>Rhode Island v. Innis</u>, 466 U.S. 291, 300–01 (1980)).

A defendant may waive their rights, "provided the waiver is made voluntarily, knowingly and intelligently." <u>Miranda</u>, 384 U.S. at 444.

**B. Analysis**

Defendant asks the Court to suppress the statements she made to SA Meyer and CI Kwako, on March 20, 2016. As noted above, Defendant contends that at the March 20, 2016, interview the officers were required to provide her with a <u>Miranda</u> warning before interrogating her, and that she did not give a valid waiver of her rights at that interview. (<u>See</u> Def.'s Mot. to Suppress Statements, Admissions, and Answers [Docket No. 25]).

It is undisputed that law enforcement's express questioning of Defendant on March 20, 2016, constituted interrogation. It is also undisputed that the Defendant was in custody during the March 20, 2016, interview when she made the statements she now seeks to suppress. It is further undisputed, and the record clearly demonstrates, that Defendant was read a <u>Miranda</u> warning before the substantive interview began. Lastly, it is undisputed that a <u>Mirada</u> waiver was executed by the Defendant at the beginning of the interview on March 20, 2016.

Accordingly, the only issue before the Court regarding Defendant's March 20, 2016, interview is whether Defendant's waiver of her rights was made intelligently, knowingly, and voluntarily.

Before a statement procured through custodial interrogation can be admitted in court, the Government must demonstrate that a defendant's waiver of her rights was made intelligently, knowingly, and voluntarily. <u>Miranda</u>, 384 U.S. at 444, 475. The validity of a <u>Miranda</u> waiver

requires consideration of two distinct inquiries, namely whether the waiver was voluntary "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception[,] and whether the waiver was knowingly and intelligently made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Vinton, 631 F.3d 476, 483 (8th Cir. 2011) (internal citations omitted) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). "The government has the burden of proving the validity of the Miranda waiver by a preponderance of the evidence." United States v. Haggard, 368 F.3d 1020, 1024 (8th Cir. 2004).

Courts assess whether a waiver of rights pursuant to Miranda was made voluntarily by considering "the conduct of law enforcement officials and the suspect's capacity to resist any pressure." United States v Contreras, 372 F.3d 974, 978 (8th Cir. 2004). The United States Supreme Court has previously explained "that coercive police activity is a necessary predicate to . . . finding that a confession is not 'voluntary,'" Colorado v. Connelly, 479 U.S. 157, 167 (1986), and the Eighth Circuit has read that holding to mean "that police coercion is a necessary prerequisite to a determination that a waiver was involuntary and not as bearing on the separate question whether the waiver was knowing and intelligent." United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998) (quoting United States v. Bradshaw, 935 F.2d 295, 299 (D.C. Cir. 1991)).

In determining whether a waiver was made voluntarily, a court "looks at the totality of the circumstances and must determine whether the individual's will was overborne." United States v. Syslo, 303 F.3d 860, 866 (8th Cir. 2002). In considering the totality of the circumstances, a court reviews whether the statement was "extracted by threats, violence, or direct or implied promises, such that the defendant's will was overborne and [her] capacity for

self-determination critically impaired." United States v. Sanchez, 614 F.3d 876, 883 (8th Cir.

2010) (internal quotation marks and citations omitted). "More specifically, [a court] consider[s],

among other things, the degree of police coercion, the length of the interrogation, its location, its

continuity, and the defendant's maturity, education, physical condition, and mental condition."

Id. (citing Sheets v. Butera, 389 F.3d 772, 779 (8th Cir. 2004)).

Defendant does not point to any particular factor which renders her March 20, 2016,

rights waiver pursuant to Miranda involuntary. Defendant offers no specific argument in her

motion papers that the officers engaged in any specific coercive or threatening tactics that caused

her will to be overborne during the interview. In fact, the Court's independent review of the

audio recording of the March 20, 2016, interview indicates that the officers did not engage in

threatening or coercive tactics. See United States v. Mims, 567 F. Supp. 2d 1059, 1080 (D. Minn.

2008) (holding Miranda waiver voluntary where, among other factors, interview was conducted

in a reasonable, conversational tone); see also United States v. Makes Room, 49 F.3d 410, 415

(8th Cir. 1995) (concluding no coercive tactics were used where, among other things, officers

made no threats or promises to the defendant). Throughout the interview, SA Meyers and CI

Kwako maintained conversational tones and made no threats or promises to Defendant. Further,

the Court's review of the recording of the interview shows that Defendant spoke willingly and

conversationally with the officers. The interview, which lasted only an hour and thirteen minutes,

was also not coercive in its duration. See Id. (noting that interrogation lasting more than two

hours was not coercive in duration).

Based on the foregoing, and under the totality of the circumstances, the Court concludes

that Defendant's waiver of her rights on March 20, 2016, was voluntary.

Next, the Court must consider whether Defendant's waiver of her rights was knowingly and intelligently made. Vinton, 631 F.3d at 483. The evidence in the record regarding Defendant's understanding of her rights and presence of mind during the March 20, 2016, interview consists of the audio recording of the interview and the testimony of SA Meyers.

Defendant fails to point to any particular factor in support of her argument that her March 20, 2016, rights waiver pursuant to Miranda was not made knowingly and intelligently. Further, Defendant offers no specific argument in her motion papers that her March 20, 2016, rights waiver pursuant to Miranda was not made knowingly and intelligently.

Defendant, however, did indicate during the course of her March 20th interview that she had consumed a drink of "Boone's Farm" the night before the interview; however, there is no evidence or testimony in the record to suggest that Defendant was intoxicated, or that her state of mind was impaired, during the interview. Defendant's generic motion to suppress, if broadly read, may be construed as arguing that Defendant did not knowingly and intelligently waive her rights on March 20, 2016, because of the alcoholic drink she had consumed the night before. In an abundance of caution, the court will address that argument.

While a defendant's intoxication may, in certain circumstances, invalidate a waiver of rights pursuant to Miranda, the Eighth Circuit has "declined to adopt a per se rule of involuntariness when confronted with intoxication." Makes Room, 49 F.3d at 415. Rather, the Eight Circuit requires an evaluation of whether, in spite of intoxication, "the evidence shows that [the defendant] understood [her] rights and knowingly waived them." Turner, 157 F.3d at 555. In Turner, the Eighth Circuit found that although the defendant was under the influence of the drug PCP, his behavior showed that, at the time of his confession, he had the mental capacity to waive his rights. Id. The court in Turner relied on the fact that the defendant was cooperative, reviewed

and initialed a waiver form, responded to questions, and gave accurate information in finding

that he had sufficient mental capacity to waive his rights. Id.

In the present case, Defendant not only likewise reviewed and signed the Advice of

Rights form, but she also read the Waiver of Rights section aloud without difficulty before

signing it. As previously noted, Defendant's demeanor was generally decent, responsive, and

conversational during the interview, similar to the defendant in Turner. Furthermore, at the

motions hearing SA Meyers offered unrebutted testimony that Defendant, at the time of the

interview, appeared fine and coherent with no indication that Defendant was under the influence

of any drugs or alcohol or that she failed to understand any of what was transpiring during the

interview on March 20, 2016.

Moreover, the Court's independent interview of the audio recording from the March 20th

interview finds it devoid of any indication that Defendant was intoxicated or that her state of

mind was impaired in any way. Defendant's coherency and state of mind are demonstrated by

her continuing denial of the offense the officers said they believed she had committed. Based on

the totality of the evidence in the record, the Court finds that, though Defendant consumed an

alcoholic drink the previous night, she had the mental capacity to understand and knowingly

waive her rights at the time of the interview the next day on March 20, 2016.

Considering the totality of the circumstances, the Court's independent review of the

audio recording of the March 20, 2016, interview indicates that Defendant appeared to fully

comprehend the conversation, understood the situation, understood the questions being asked of

her, and provided contextually appropriate answers. The audio recording, further, provides that

SA Meyers allowed Defendant to follow along with the written Miranda warning while SA

Meyers read the Miranda warning aloud to Defendant.  The audio recording also provides that

SA Meyers had Defendant read the Waiver of Rights portion of the Advice of Rights form aloud herself before she signed the form. Defendant signed the form only after she had read the Waiver of Rights portion aloud. A defendant's signing of such a form "carries a significant weight in determining whether [her] waiver was knowing and intelligent." United States v. Gallardo, 495 F.3d 982, 991 (8th Cir. 2007) (citing Butler, 441 U.S. at 373).

Therefore, the Court concludes that Defendant's waiver of her rights prior to the March 20, 2016, interview was done knowingly and intelligently.

Based on the foregoing, the Court recommends **DENYING** Defendant's Motion to Suppress Statements, Admission, and Answers. [Docket No. 25].

## III.     CONCLUSION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Defendant's Motion to Suppress Statements, Admission, and Answers, [Docket No. 25], be **DENIED**.

Dated: August 9, 2016                                      **s/ Leo I. Brisbois**
                                                           Leo I. Brisbois
                                                           U.S. MAGISTRATE JUDGE

### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within

14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.